**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TDY HOLDINGS, LLC; TDY INDUSTRIES, LLC, | No. 19-55804 |
| Plaintiffs-Appellants, | D.C. No. 3:07-cv-00787-CAB-BGS |
| v. | |
| UNITED STATES OF AMERICA; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted October 6, 2020
Seattle, Washington

Before: GRABER and W. FLETCHER, Circuit Judges, and FREUDENTHAL,[**] District Judge.

Plaintiff TDY Holdings, LLC, timely appeals from the district court's

allocation of remediation costs between TDY and the government, in this action

under the Comprehensive Environmental Response, Compensation, and Liability

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Nancy D. Freudenthal, United States District Judge for the District of Wyoming, sitting by designation.

Act of 1980, 42 U.S.C. §§ 9601–75.  Reviewing for abuse of discretion the district court's selection of factors and for clear error in its allocation of costs according to those factors, Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1187 (9th Cir. 2000), we affirm.

1.  The district court did not violate our mandate in TDY Holdings, LLC v. United States, 885 F.3d 1142 (9th Cir. 2018) ("TDY I") because, on remand, the district court (1) considered the parties' course of dealings; (2) permissibly analyzed and applied United States v. Shell Oil Co., 294 F.3d 1045 (9th Cir. 2002), and Cadillac Fairview/California, Inc. v. Dow Chemical Co., 299 F.3d 1019 (9th Cir. 2002); and (3) allocated at least some cleanup costs to the government.  TDY Holdings, LLC v. United States, 372 F. Supp. 3d 1091, 1098–99, 1101 (S.D. Cal. 2019) ("TDY II").  Read holistically, our prior opinion did not require that the district court's reconsideration of the parties' course of dealings and our precedents reach a predetermined result.  See United States v. Alpine Land & Reservoir Co., 983 F.2d 1487, 1492 (9th Cir. 1992) (holding that a district court on remand is to read our opinion "in its entirety" and in "context").

2.  In allocating costs on remand, the district court did not abuse the "broad discretion" that we emphasized in our prior opinion.  TDY I, 885 F.3d at 1149.  The district court permissibly tailored the government's allocation to approximate

2

only cleanup costs for contamination that was inherent to the use of chemicals that the government had required. See id. at 1148 (holding that the district court properly considered "that TDY's own repair and maintenance practices caused the contamination").

Thus, the district court did not clearly err in allocating to the government 5% of the cleanup costs linked to chromium, because it permissibly found that "micro-quantities" of contamination through aeration represented the only inherent contamination from chromium's mandated use. TDY II, 372 F. Supp. 3d at 1100; see also ASARCO LLC v. Atl. Richfield Co., No. 18-35934, 2020 WL 5509748, at *7 (9th Cir. Sept. 14, 2020) (holding that a district court "need not allocate response costs to a mathematical certainty, and . . . [can] apply general principles of fairness and equity in deciding whether to err on the side of over- or under-compensation"). Similarly, the district court did not clearly err in allocating to the government 10% of the cleanup costs for a groundwater plume linked to chlorinated solvents, because it permissibly found that the sewer dumping—authorized by a municipal permit before modern environmental laws' passage—was "most equitably related" to the "government's role." TDY II, 372 F. Supp. 3d at 1100–01. Finally, the district court did not clearly err in allocating to TDY all of the cleanup costs linked to polychlorinated biphenyls, because the

government did not mandate their use. Although a reasonable jurist may have reached a different allocation, discretion's very nature allows for such divergent approaches.

3. The district court did not clearly err in allocating to TDY all cleanup costs for contamination that occurred after 1979, when the government ceased to own equipment at TDY's plant. To the extent that the district court erred in concluding that sovereign immunity shielded the government from post-1979 costs, id. at 1099 n.5, any error was harmless. We already had allowed the district court to consider how long the government had owned equipment at the site as an equitable factor. TDY I, 885 F.3d at 1148. The district court also gave no indication that it would have extended the government's liability if only it believed that it could have done so.

4. Finally, the district court did not clearly err when it allocated to TDY all post-2012 remediation costs. All remediation for which the government was responsible was completed or very nearly completed by the end of 2012, the year of trial.

**AFFIRMED.**

4